UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


JEREMY S. JONES,                    )
                Petitioner,         )
                                    )
v.                                  )        NO. 2:05-CR-62
                                    )        NO: 2:07-CV-222
UNITED STATES OF AMERICA,           )        Judge Greer
                Respondent.         )


## MEMORANDUM OPINION

Jeremy S. Jones ("Petitioner" or "Jones"), a federal prisoner, has filed this "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 44]. The United States has responded in opposition, [Doc. 50], and Jones has replied to the government's response, [Doc. 52]. The matter is now ripe for disposition.

The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit and the motion will be DENIED.

## I.    Procedural Background

On June 20, 2005, a criminal complaint was filed in this Court charging Jones with conspiracy to distribute and possess with the intent to distribute 500 grams

or more of cocaine, [Doc. 1]. On July 6, 2005, the petitioner and his attorney signed a written plea agreement with the United States in which he agreed to plead guilty to a one count information charging him with a conspiracy to distribute and to possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), [Doc. 14]. On July 22, 2005, petitioner appeared before the Court, waived his right to an indictment, [Doc. 12], and entered a plea of guilty to the one count information, [Doc. 10]. During the hearing, after petitioner waived his right to an indictment but before he entered his guilty plea, the United States filed an information pursuant to 21 U.S.C. § 851 establishing petitioner's prior felony drug convictions, [Doc. 13].

A presentence report was ordered and was disclosed to the parties on September 21, 2005. Based on the quantity of cocaine involved in the offense of at least two kilograms but less than 3.5 kilograms, the presentence report established a base offense level of 28 pursuant to USSG § 2D1.1. After a three level reduction for acceptance of responsibility pursuant to USSG § 3E1.1, the adjusted offense level became 25. Because of petitioner's prior drug related felony convictions, however, he was determined to be a career offender within the meaning of USSG § 4B1.1(a). As a result, his offense level was determined to be a 37 rather than the 25 which would otherwise have applied. After the adjustment for acceptance of responsibility,

his total offense level was determined to be 34. Jones objected to the career offender classification, arguing that his predicate offenses were related cases that should not have been counted separately. The Court heard argument on petitioner's objection and held that the petitioner's prior convictions were properly considered separately, due to an intervening arrest, [Doc. 38, p. 2-9]. This resulted in a guideline range for imprisonment of 262 to 327 months.

Prior to sentencing, the government filed a motion for downward departure based upon petitioner's substantial assistance, [Doc. 26]. The Court granted the government's motion and departed downward by the three levels suggested by the government, resulting in an advisory guideline range of 188 to 235 months imprisonment, [Doc. 38, pp. 13-14]. On April 24, 2006, petitioner was sentenced to a term of 200 months imprisonment and judgment was entered on May 1, 2006, [Doc. 34].

The petitioner timely appealed his conviction and sentence, [Doc. 35]. On December 13, 2006, the Sixth Circuit Court of Appeals dismissed petitioner's appeal for lack of jurisdiction based upon the appellate waiver contained in the petitioner's plea agreement, [Doc. 40]. The Supreme Court thereafter denied *certiorari*, [Doc. 43]. Petitioner then timely filed the instant § 2255 motion.

## II.    Factual Background

At the time Jones entered into his plea agreement with the government, he and his attorney also stipulated to facts sufficient to establish a factual basis for his guilty plea.  The agreed factual basis, [Doc. 15], was filed along with the plea agreement. The following statement of facts comes from the agreed factual basis:

> Jeremy Scott Jones, age 26, resides in Newport, Tennessee. Jones was convicted on January 12, 2000 (amended 8/31/00), in the Criminal Court for Cocke County, Tennessee, of sale of cocaine in excess of .5 grams with an offense date of 1/2/98, and possession of cocaine with intent to sale with an offense date of 5/22/98, both are felonies.

> Larry Joe Dodgin was a deputy with the Cocke County Sheriff's Office.  Dodgin had admitted to other law enforcement officers that he has been in regular contact with Jeremy Scott Jones, a known drug trafficker.  Dodgin received illegal drugs from Jeremy Jones for Dodgin's personal use.

> On March 30, 2005, an FBI special agent, acting undercover, met Jeremy Jones and Larry Joe Dodgin, a Cocke County Sheriff's Deputy and co-defendant, in Newport, Tennessee.  Among other criminal activities, Dodgin advised the agent that he had a friend who dealt in brick quantities of dope.

> On April 22, 2005, during a recorded telephone call, Dodgin told the undercover agent, during discussions about other criminal activity, that he wanted to talk to the agent about another proposal, but not on the phone.  Immediately after speaking with the undercover agent, Dodgin called Jones.

On the morning of April 26, 2005, the undercover agent and Dodgin met near Exit 447 on Interstate 40. The agent and Dodgin then drove together to Asheville, North Carolina, where they at lunch. The undercover agent then drove Dodgin back to his vehicle. During this time, Dodgin queried whether the undercover agent's "organization" would sell multi-kilos of cocaine to one of Dodgin's friends, "Jeremy," a convicted felon. Dodgin advised that he had previously witnessed cocaine in his friend's possession in the past and had advised him to move the cocaine to another location as to avoid possible search warrant being executed. When the undercover agent and Dodgin discussed the price for the cocaine, Dodgin called Jeremy Jones. The undercover agent suggested that when Dodgin talked about the deal on the phone, he should refer to the drugs as "tires." After the call, Dodgin advised the undercover agent that Jones paid between $22,000.00 and $24,000.00 per kilo for cocaine. Dodgin and the undercover agent discussed using a code when they would talk about these events over the telephone. The agent and Dodgin agreed that when discussing the cocaine, they would refer to the cocaine as the "nasty product." After their meeting, the undercover agent received a call from Dodgin stating, among other things, that his "nasty buddy" would like to buy the "tires" (cocaine) at a price of $19.00 each ($19,000.00 per kilo).

On April 27, 2005, Dodgin called the undercover agent. Among discussions about other criminal activity, Dodgin asked the undercover agent about the "dirty" [the cocaine to be supplied to Jeremy Jones]. Dodgin suggested getting a pager for "his buddy" who can then go directly to a pay phone. The undercover agent suggested getting "throw-away" phones from Wal-Mart.

On the morning of April 30, 2005, the undercover agent called Dodgin and advised Dodgin to have Jones, who wanted to buy the "nasty" stuff (cocaine), activate the

throw-away telephone and call the undercover agent's cellular telephone.  The agent told Dodgin that he would then capture the telephone number and pass it on to  his associates.

On May 7, 2005, another undercover agent, posing as the source of supply for the cocaine, called Jones on Jones' pre-paid cell phone that he had acquired.  The second undercover agent told Jones that Jones would have to have the money up front for the first deal.  The price was to be "20" and the cocaine would be there within a week. A few days later, Jones and Dodgin met with the original undercover agent.  Jones confirmed he had been in direct contact with the agent posing as the supplier of cocaine.

On June 2, 2005, Dodgin and Jones attempted to purchase three kilograms of cocaine from an undercover FBI agent.  However, the deal was not completed after the person who was to fund the deal did not provide Jones the money.

On June 16, 2005, Dodgin again contacted a special agent of the FBI who was acting in an undercover role. Dodgin advised the agent that he was prepared to purchase three kilograms of cocaine for $60,000.00 and had already gathered half of the money.

On June 17, 2005, Dodgin again contacted the undercover agent and advised that he was ready to meet the agent to obtain the cocaine.  Dodgin met the undercover agent near Exit 417 of Interstate 40 in Dandridge, Tennessee.  As Dodgin had arranged with the agent, Dodgin placed a quantity of cash in partial payment for the cocaine in the front seat of the undercover agent's vehicle and removed a black bag containing the cocaine from the rear of the vehicle.  Dodgin told the undercover agent that Jones was in the area.  Dodgin then took the bag and placed it in his vehicle.  Dodgin was then taken into custody.

Dodgin acknowledged that several calls to his cell phone shortly after he was taken into custody were from Jones.

The following additional facts were set forth in paragraph 19 of the presentence report and were unobjected to:

> According to the criminal complaint, Larry Joe Dodgin, age 26, was employed as a deputy sheriff by the Cocke County, Tennessee Sheriff's Office and assigned to patrol duties. Dodgin had admitted to other law enforcement officers that he had been in regular contact with Jeremy Jones, a known drug trafficker. Dodgin had also provided information to Jeremy Jones concerning law enforcement activities, to include search warrants and arrests. Jeremy Jones was also known to have supplied Larry Dodgin with illegal drugs for Dodgin's personal use, and Larry Dodgin had told cooperating witnesses that he had distributed illegal drugs. Negotiations between Larry Joe Dodgin, Jeremy Jones, and a special agent of the FBI, working in an undercover capacity, continued from March through June of 2005. Based upon the information outlined in the agreed factual basis, the defendant will be held accountable for conspiracy to distribute three kilograms of cocaine.

## III. <u>Standard of Review</u>

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the

Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d

1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the

9

adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## IV. **Analysis and Discussion**

Jones separates his claims of ineffective assistance of counsel into three main claims: (1) that he was denied effective assistance of counsel because his guilty plea and/or plea agreement was not knowingly and voluntarily entered; (2) he was denied his Sixth Amendment right to effective assistance of counsel during sentencing; and (3) he was denied his Sixth Amendment right to effective assistance of counsel on direct appeal. More specifically, he alleges that his waiver of indictment and waiver of his right to appeal were not knowingly and voluntarily made and he claims that the government's § 851 notice of enhancement was not timely filed. He claims

ineffective assistance of counsel during sentencing because of counsel's failure to challenge the timeliness of the § 851 enhancement, counsel's failure to challenge the court's violation of the procedures set forth in § 851(b), counsel's failure to collaterally attack his prior state court convictions on various grounds, and counsel's failure to challenge his career offender status under the guidelines. He alleges ineffective assistance of counsel on direct appeal because his counsel did not raise what he perceives to be the untimely filing of the § 851 information which, he argues, deprived the court of jurisdiction to impose an enhanced punishment. Because many of petitioner's arguments relate to the information filed pursuant to 21 U.S.C. § 851, the Court will address that issue first.

**A.      Ineffective assistance of counsel/guilty plea and/or plea agreement was not knowingly and voluntarily entered.**

**1.      The timeliness of the § 851 information**.

A defendant convicted of a violation of 21 U.S.C. § 841(a)(1) is subject to a sentence enhancement on the basis of prior drug-related convictions. *See* 21 U.S.C. § 841(a)(1). More specifically, a defendant convicted of conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine, as Jones was, faces a statutory term of imprisonment of 5 to 40 years; however, if that same defendant has a prior drug felony, the statutory term of imprisonment is increased to a term of

imprisonment of ten years to life.  21 U.S.C. § 841(b)(1)(B).

If the government wishes to subject a convicted defendant to increased punishment by reason of his prior drug related convictions, it must "before trial or before entry of a plea of guilty" file with the court an information stating in writing the previous convictions upon which it intends to rely.  *See* 21 U.S.C. § 851(a)(1).  A copy of the information must be served on the defendant or his counsel.  *Id.*  The requirement is mandatory, and a district court cannot enhance a defendant's sentence based on a prior conviction unless the government satisfies the requirement.  *United States v. Williams*, 899 F.2d 1526, 1529 (6th Cir. 1990).  An information may not be filed "unless the [defendant] either waived or was afforded prosecution by indictment . . ."  21 U.S.C. § 851(a)(2).

Under § 851, a defendant may claim the invalidity of a prior conviction listed in the government's information. 21 U.S.C. § 851(c).  A defendant may not, however, challenge the validity of a prior conviction "which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). The Sixth Circuit has applied 21 U.S.C. § 851(e) to bar defendants from collaterally attacking convictions that occurred more than five years prior to the filing of the information.  *See e.g. United States v. Jenkins*, 4 F.3d 1338, 1343 (6th Cir. 1993) (barring attack on 1981 conviction but not on 1986 conviction where information was

filed in 1991). If the government files a § 851 information, the court, after conviction, but before pronouncement of sentence, must inquire whether the defendant affirms or denies that he has been convicted as alleged in the information and must inform defendant that any challenge to a prior conviction that is not made before sentence is imposed may not thereafter be raised to attack the sentence. 21 U.S.C. § 851(b); *Williams*, 899 F.2d at 1529.

In this case, a criminal complaint charging defendant with a conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 851(a)(1) was filed on June 20, 2005, [Doc. 1]. On July 6, 2005, Jones signed a plea agreement in which he agreed to plead guilty to an information charging him with the conspiracy, [Doc. 14]. In the plea agreement, Jones acknowledged that he was subject to a mandatory minimum of ten years imprisonment up to life imprisonment.

A hearing was scheduled for July 22, 2005. Petitioner acknowledged that he wished to plead guilty to an information charging him with a conspiracy to possess with the intent to distribute 500 grams or more of cocaine and acknowledged that he understood he was under oath. Jones affirmed that he wished to waive indictment by a grand jury and allow the matter to proceed by information rather than indictment. He further acknowledged that he had executed a written waiver of his right to

indictment by the grand jury, [Doc. 12]. An information to establish prior convictions, [Doc. 13], was then handed to the Court for filing and the Assistant United States Attorney confirmed that a copy had been provided to Jones and his attorney, [Doc. 39, p. 6]. The Court then entered into a thorough Rule 11 plea colloquy with petitioner during which Jones testified under oath that he had signed and understood his plea agreement, was pleading guilty because he was in fact guilty, understood the rights he was waiving by pleading guilty and, very importantly, that he understood that he was subject to the mandatory minimum ten year term of imprisonment and the maximum of life imprisonment. The following exchange took place among the Court, counsel for the government and Jones:

<blockquote>

The Court: Alright. Mr. Smith, will the government please advise the defendant as to the maximum possible penalty provided by the law for this offense.

Mr. Smith: Yes, your Honor. The maximum penalty is a term of imprisonment of not less than ten years nor more than life, a fine of not more than $4 million, a term of supervised release of not less than eight years to life and a $100 mandatory assessment.

Q: Mr. Jones, do you understand that that is the maximum sentence the Court could impose in this case?

A: Yes, sir.

</blockquote>

| Q: | Do you understand that the statute requires the imprisonment of a 10 year mandatory minimum sentence in this case? |
|---|---|
| A: | Yes, sir. |
| Q: | And do you further understand that absent extraordinary circumstances or a government motion for downward departure, that this Court will be required to impose the ten year – at least the ten year mandatory minimum sentence in this case? |
| A: | Yes, sir. |
| Q: | Do you understand that if I sentence you to prison, you will not be released on parole as there is no parole in the federal system? |
| A: | Yes, sir. |

[Doc. 39, pp. 12-13].    Jones also acknowledged unequivocally that he understood that the Court could impose a life sentence in this case and, in spite of that possibility, he still wanted to plead guilty, [*Id.* at p. 15].

Jones now argues that the § 851 notice of enhancement establishing his prior convictions was not timely and was thus ineffective because "it was impossible for the government to comply with the mandatory requirements of § 851 and file a notice of information after Mr. Jones' waiver of indictment but before the guilty plea colloquy,"

[Doc. 44, p. 27].  He argues that the § 851 information was filed after the start of the Rule 11 colloquy and "[t]hus, any § 851 notice filed prior to this hearing was filed prior to obtaining a waiver of indictment from Mr. Jones." *Id.*  Jones asserts that he was never advised of the "requirements and safeguards of § 851," was "never told that his sentence was being enhanced because it," and that he would never have entered into the plea agreement or pled guilty if he had known of the requirements of § 851 and would instead have insisted on a trial, [*Id.* at pp. 19-20].

Jones's claim fails for several reasons.  First of all, his argument that a § 851 notice filed after the beginning of a plea colloquy is ineffective has no statutory or case law support.  Jones is correct that an information under § 851 may not be filed unless there has been an indictment or a waiver of indictment.  His argument, however, that he did not waive indictment until after the guilty plea colloquy had begun and thus it was impossible for the government to comply with the mandatory provisions of § 851 is both factually and legally incorrect.

As the transcript of the July 22, 2005 proceeding clearly establishes, the Court unequivocally informed Jones of his right to an indictment and determined that his waiver of indictment was knowledgeably and voluntarily made before accepting the waiver.[1]  The § 851 information was filed immediately after acceptance of the waiver.

---

[1]  See Rule 7(c), Fed. R. Crim. P.

[Doc. 39, pp. 2-6]. Only then did the Court proceed with the required Rule 11 plea colloquy. Furthermore, the plain language of § 851 makes it clear that the information must be filed "before entry of the guilty plea," not before the beginning of a Rule 11 colloquy. Petitioner conveniently overlooks the fact that the Court could not have conducted the plea colloquy and subsequently accepted his guilty plea to an information if he had not first made a knowledgeable and voluntary waiver of indictment. Absent the waiver, the government would have been free to seek indictment by a grand jury and then file its notice of enhancement.

Even if the defendant's claim were factually correct, his argument would nevertheless lack merit. The Sixth Circuit has held that untimely filing under § 851 may be excused "as long as the defendant has been made aware before the trial or entry of the guilty plea of both the government's intent to seek an enhancement and the particular prior conviction(s) upon which the government aspires to rely." *United States v. Pritchett*, 496 F.3d 537, 548 (6th Cir. 2009) (quoting *United States v. Prou*, 199 F.3d 37, 44 n.3 (1st Cir. 1999)). *See also United States v. Boudreau*, 564 F.3d 431 (6th Cir. 2009). The *Pritchett* court expressly rejected a "rigid approach" to enforcement of § 851's notice requirements. *Pritchett*, 496 F.3d 549. Here, Jones was

provided with a copy of the § 851 notice before the entry of his guilty plea,[2] and he

was clearly and unequivocally informed by the Court of the enhanced penalty which

applied to his case, *i.e.* ten years to life imprisonment. Just as importantly, Jones

acknowledged the enhanced penalty in his plea agreement and stipulated to the prior

convictions in an agreed factual basis filed along with his plea agreement. [Doc. 15.[3]

A more fundamental flaw, perhaps, in Jones' argument is that he can show no

prejudice from the error he claims. Absent the notice of enhancement pursuant to §

851, Jones faced a mandatory minimum term of five years imprisonment up to 40

years imprisonment. Because of his prior felony drug related convictions, as set forth

in the § 851 information, Jones's mandatory minimum sentence was increased from

five years imprisonment to ten years imprisonment and his statutory maximum from

---

[2]

| The Court: | . . . Mr. Smith, I've also been handed a document entitled information filed by the United States attorney to establish prior convictions. Do you wish for this to be filed? |
| Mr. Smith: | Yes, your Honor, if it may be filed at this time. |
| The Court: | Alright, has a copy been provided to Mr. Jones and his attorney? |
| Mr. Smith: | Yes, your Honor. |

[Doc. 39, p. 6, ll 4-14]

[3] Jones stipulated to felony convictions on January 12, 2000, in the Criminal Court for Cocke County, Tennessee of sale of cocaine in excess of .5 grams with an offense date of 1/2/98, and possession of cocaine with intent to sell with an offense date of 5/22/98.

40 years to life imprisonment. Because he is a career offender under USSG §

4B1.1(a), Jones had a guideline range of 262 to 327 months imprisonment, well below

the 40 year maximum which would have applied without the § 851 notice, and also

well below the life term of imprisonment Jones acknowledged could be imposed in

the case.[4] After the government moved for a downward departure, Jones was

ultimately sentenced to a 200 month term of imprisonment. The minimum mandatory

therefore had no impact on the defendant's sentence, which would have been the

same with or without the § 851 information being filed.

## 2. The waiver of the right to indictment

Jones argues that his waiver of indictment was not knowing and voluntary

because he was never informed that "the court was without jurisdiction to impose the

§ 851 enhancement, absent Mr. Jones's waiver of indictment. [Doc. 44, p. 17]. He

argues that had he "been made aware of the mandatory requirements of § 851, he

---

[4]
> Q. In other words, Mr. Jones, do you understand that under some circumstances I could impose a life sentence in this case?
>
> A. Yes, sir.
>
> Q. Understanding that I could do so, do you still want to plead guilty?
>
> A. Yes, sir.

[Doc. 39, p. 15].

would never have agreed to sign the waiver of indictment" and would never have agreed to plead guilty or enter a plea agreement that contained an improper and illegally enhanced statutory maximum." *Id.* He requests that his guilty plea and plea agreement "be set aside as unknowing and involuntary" or, alternatively, that his sentence be "corrected to reflect a guidelines range based on the correct statutory maximum."[5] *Id.* at p. 18.

Once again, petitioner's argument is flawed for the reasons set forth in the preceding section. There was no error in the filing of the § 851 information and thus no deficiency in counsel's performance related to the notice. Furthermore, petitioner was advised by the Court of his right to indictment by a grand jury, acknowledged under oath that he had discussed the matter with his attorney, that he was aware of his right to indictment, that no promises or threats had been made to induce him to waive indictment, and he affirmatively indicated that he wished to waive indictment. He was fully informed of the minimum mandatory and statutory maximum terms of imprisonment. This is all that is required by Rule 7(a) or case law for his waiver to be knowing and voluntary.

The waiver of any constitutional right must be both knowing and voluntary. *Martin v. Rose*, 744 F.2d 1245, 1251 (6th Cir. 1984) (quoting *Johnson v. Zerbst*, 304

---

[5]   The statutory maximum had nothing to do with Jones's guidelines range.

U.S. 458, 464 (1938)).   Rule 7(b) of the Federal Rules of  Criminal Procedure

provides that a waiver of indictment by a grand jury must be made by the defendant

"in open court and after being advised of the nature of the charge and of the

defendant's rights."  It is sufficient for Rule 7(b) purposes that the defendant file in

open court a written waiver of indictment.  *United States v. Danou*, 260 Fed. Appx.

864 (6th Cir. 2008); *See also Kossin v. United States*, 235 F.2d 188, 189 (6th Cir.

1956).  Here, the requirements of Rule 7(b) were fully complied with and petitioner

signed a waiver which clearly and unambiguously waived his right to indictment.

      **3.**      **Waiver of right to appeal**

Paragraph 15 of Jones's plea agreement contains a waiver of his right to file a

direct appeal and his right to file any motion or pleading pursuant to 28 U.S.C. § 2255.

Despite the waiver, Jones did  file a direct  appeal.  That appeal, however, was

dismissed by a panel of the Sixth Circuit Court of Appeals on December 13, 2006, on

the basis of the appellate waiver.  Jones now argues that counsel was ineffective

because he was not fully informed of the consequences of the waiver.  More

specifically, Jones claims that: (1) counsel never told him he could not appeal his

sentence even if the sentence was unconstitutional and/or illegal; (2) he was not aware

that the plea agreement even contained an appellate waiver until his plea colloquy; (3)

he was never informed "that the waiver would result in the loss forever of his right to

a direct appeal and to collaterally attack his conviction and/or sentence;" and (4) he was never told the waiver "might also include any ineffective assistance of counsel claims."

Paragraph 15 of the plea agreement signed by Jones on July 6, 2006, provides:

> The defendant further agrees not to file a direct appeal or any motions or pleadings pursuant to 28 U.S.C. § 2255. Thus, the defendant knowingly, intentionally, and voluntarily waives his right to appeal and collaterally attack the plea or sentence in the instant case. The defendant understands that if the defendant files any such motion, he will have breached the plea agreement and the United States will then have the following options: (1) move to dismiss the motion, (2) be relieved of any obligations under the plea agreement or (3) both. The parties agree that the defendant retains his right to raise claims of ineffective assistance of counsel or prosecutorial misconduct.

Also, the following colloquy between the Court and petitioner took place at the hearing on petitioner's entry of a guilty plea on July 22, 2005:

> Q. Alright. I understand there is a plea agreement in this case. Have you read this plea agreement?
>
> A. Yes, sir.
>
> Q. Has your attorney explained to you all the terms and conditions of this agreement you've entered into with the government?
>
> A. Yes, sir.
>
> Q. Do you fully understand all the terms and conditions of your agreement with the government?

A.    Yes, sir.

[Doc. 39, p. 8].

> The Court:  Mr. Smith has the defendant waived any appeal rights or rights to file a § 2255 motion in this plead [sic] agreement?
>
> Mr. Smith:  Yes, your Honor.  Mr. Jones in paragraph 15 of his plea agreement has agreed not to appeal his conviction or sentence or file any motions or pleadings for post-conviction relief pursuant to 28 U.S.Code section 2255.  Again, this waiver does not apply to claims of ineffective assistance of counsel or prosecutorial misconduct not known to Mr. Jones at the time of the entry of his plea.
>
> Q.    Mr. Jones, do you understand that under your plea agreement with the government you have expressly waived certain rights to appeal your conviction or sentence or to collaterally attack your plea or sentence as just stated by the United States attorney?
>
> A.    Yes, sir.
>
> Q.    Have you and your attorney discussed this waiver of your rights to appeal and your right to collaterally attack your sentence?
>
> A.    Yes, sir.

[Doc. 39, pp. 13-14]

Thus, the record flatly contradicts petitioner's claim of ignorance of the appellate waiver.  Paragraph 15 of the plea agreement sets forth the waivers of direct appeal and collateral review in plain, unequivocal language.  Jones acknowledged under oath that he had "had an ample opportunity to discuss [his] case with [his]

lawyer," that he had read and "fully" understood all the terms and conditions of the plea agreement, that his attorney had explained to him all the terms and conditions of the plea agreement, that he understood that he had waived rights to appeal or to collaterally attack his conviction or sentence and that he had discussed the waivers with his attorney. He specifically acknowledged that he had "agreed not to appeal his conviction or sentence or file any motions or pleadings for post-conviction relief pursuant to 28 U.S.Code section 2255" except for "claims for ineffective assistance of counsel or prosecutorial misconduct not known to Mr. Jones at the time of the entry of his plea."

Jones is now bound by his statements under oath at the plea colloquy. He was clearly informed that he was waiving his right to appeal his sentence and was clearly aware that the plea agreement contained the appellate waiver because he had read and signed the plea agreement on July 6, 2005, two weeks prior to the hearing on July 22, 2005, **and** counsel had informed him of **all** the terms of the agreement. The waiver was not qualified in any way which would suggest to petitioner that he was not relinquishing his right to appeal "forever," or that the waiver did not include claims of ineffective assistance of counsel. It is well settled that collateral relief is not available based upon mere allegations that contradict statements the petitioner made before the Court under oath in Rule 11 proceedings. *See Blackledge v. Allison*, 431

U.S. 63 (1977). A defendant is bound by admissions made at a change of plea hearing, even in the face of some evidence contradicting those statements. To do otherwise would condone the practice of defendants providing untruthful responses to questions during plea colloquies. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.), *cert. denied* 528 U.S. 847 (1999). Petitioner's argument lacks merit.

**B.      Ineffective assistance of counsel during sentencing**

**1.      Counsel's failure to challenge the § 851 enhancement**

Jones largely repeats and recycles here the arguments he made concerning the § 851 enhancement which were discussed in section IV(A) above. Because his claims concerning the validity and timeliness of the § 851 information lack merit, counsel was not deficient for failing to raise a meritless issue. *See Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) (Counsel could not be constitutionally ineffective for failing to raise . . . merit less arguments.").

**2.      Counsel's failure to challenge the Court's violation of § 851(b) and his prior convictions**

As set forth above, 21 U.S.C. § 851(b) requires the court, "before pronouncement of sentence" to inquire as to whether the defendant "affirms or denies that he has been previously convicted as alleged in the information" and to "inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). It

is undisputed that the Court only asked Jones to affirm or deny the prior drug related convictions and neglected to inform him that any challenge had to be made before sentence was imposed.

Counsel's failure to object to the Court's error in neglecting to inform him that any challenge to a prior conviction had to be made before sentencing, Jones argues, amounts to ineffective assistance of counsel. According to Jones, had he "been afforded his due process right to demonstrate the constitutional infirmity of his priors, he would have proven that these state convictions were not valid" and could not be used for enhancement purposes, [Doc. 44, p. 30]. Jones's argument is without merit.

This is so because § 851(e) bars a defendant from challenging the validity of any prior conviction more than five years old at the time the § 851 notice was filed. Petitioner's prior convictions occurred on January 12, 2000 (with offense dates of January 2, 1998 and May 22, 1998) and the notice of enhancement pursuant to § 851 was filed on July 22, 2005, more than five years later. The failure to conduct the full § 851(b) colloquy, therefore, was not error. "Requiring the trial court to conduct a colloquy under these circumstances would be 'elevating form over substance,' contrary to the purposes of § 851." *United States v. West*, 130 Fed. Appx. 753, 760, 2005 WL 1017987 at * 6 (6th Cir. 2005). The failure of counsel to object to a non-error cannot be ineffective assistance of counsel.

Because Jones was barred by § 851 from attacking the validity of his prior state convictions, and because the Court was not obligated to conduct the full § 851 colloquy, his arguments concerning the validity of these convictions are completely moot. Petitioner acknowledges in his reply to the government's response that he could not have challenged the validity of his priors and withdraws his claim in that respect.

### 3. Counsel's failure to challenge the career offender enhancement of USSG § 4B1.1

A defendant is a career offender under the sentencing guidelines if the defendant is at least 18 years old at the time of the commission of the instant offense, the instant offense is a felony that is either a crime of violence or a controlled substance offense and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG § 4B1.1. Thus, because the offense of conviction, conspiring to distribute and to possess with the intent to distribute 500 grams or more of cocaine, is a felony controlled substance offense and Jones was at least 18 years of age at the time of conviction, he was subject to the career offender enhancement of § 4B1.1 based on his prior felony controlled substance offenses. While Jones acknowledges that the notice requirements of § 851 do not apply to the career offender enhancement under the sentencing guidelines, he nevertheless argues that his constitutional due process rights require such notice.

Petitioner's due process argument, however, has been rejected by the Sixth

Circuit.  Jones was fully aware of the maximum sentence he could receive (life), acknowledged that his guidelines sentencing range would be considered by the Court in setting a reasonable sentence in his case, and acknowledged that his advisory guidelines range would not be determined until a presentence report was prepared, [Doc. 39, p. 14].  Under such circumstances there are "no due process implications." *United States v. Herrera*, 375 F.3d 399, 407 (6th Cir. 2004) ("Concerns for due process do not require that a criminal defendant be placed on advanced notice of the application of a career offender sentence under § 4B1.1 . . .").[6]

Jones makes two additional arguments concerning the career offender enhancement.  First, he argues that Tennessee state law changed subsequent to his January 12, 2000 sentencing in the Cocke County, Tennessee Criminal Court and that the two prior controlled substances offenses were no longer felony offenses, thus precluding their use for enhancement purposes under § 4B1.1.  Second, he argues in his reply for the first time that these prior state convictions could not be used as predicate offenses for purposes of the career offender enhancement because "the Court could not determine from the record the class of prior(s) the defendant was found guilty of," citing *United States v. Pruitt*, 545 F.3d 416 (6th Cir. 2008), [Doc. 52, pp. 8-

---

[6]  Jones also makes the argument that he "believed that he was entering a Plea Agreement such that in exchange for his plea and cooperation, the government would not be pursuing sentence enhancements . . ."  Both the express terms of his plea agreement and Jones's testimony under oath at the change of plea hearing contradict his claim.

9]. More specifically, he argues that "the Tennessee statute under which Mr. Jones was convicted for these priors contains different degrees of violations, some of which are not trafficking offenses and some of which do not carry a maximum sentence of 1 year or more, . . ." [*Id.* at p. 9]. He does not further develop his argument.

Petitioner's claims are without merit and counsel was not ineffective for failing to raise meritless claims. Contrary to petitioner's assertion, the Tennessee statutes under which Jones was convicted have not been amended subsequent to January 12, 2000. Furthermore, both the controlled substance offenses of which Jones was convicted on January 12, 2000, were then, and are now, felony offenses punishable by more than one year of imprisonment.

The relevant Tennessee statute, T.C.A. § 39-17-417, makes it an offense for a defendant to knowingly sell a controlled substance or possess a controlled substance with intent to sell. *See* T.C.A. § 39-17-417(a)(3) and (4). A violation involving cocaine is a Class B felony if the amount involved is 0.5 grams or more or a Class C felony if in an amount of less than 0.5 grams. T.C.A. § 39-17-417(c). Pursuant to T.C.A. § 40-35-111, the statutory minimum term of imprisonment for a Class B felony is eight years and for a Class C felony three years. Thus, both of Jones' prior convictions were felony controlled substances offenses as defined by USSG § 4B1.2(b). Furthermore, *United States v. Pruitt* has absolutely no application to Jones's

case.

**C.  Ineffective assistance of counsel on direct appeal**

Jones claims ineffective assistance of counsel on direct appeal because, he argues, "counsel failed to raise a clearly obvious issue on appeal," that is, the "jurisdictional issues" he has now raised related to the § 851 notice of enhancement, [Doc. 44, p. 54].  By petitioner's reasoning, since the issue is jurisdictional, and since "jurisdictional claims can be presented at any time during a criminal proceeding," the Sixth Circuit would not have dismissed his appeal and his sentence would have been vacated.

Petitioner's argument suffers from two obvious flaws.  First, the Sixth Circuit has expressly held that untimely filing of the § 851 notice is not jurisdictional.  *See Pritchett*, 496 F.3d at 546 ("[T]his Circuit now joins the majority of its sister circuits in holding that the section 851(a) requirements are not jurisdictional.") Secondly, petitioner's claim related to the § 851 notice lacks merit and , even if there had been no appellate waiver, there could have been no deficient performance on the part of counsel in failing to raise a meritless issue on appeal.  Jones's claim of ineffective assistance of counsel on direct appeal, therefore, lacks merit.

**V.  Conclusion**

For the reasons set forth above, the Court holds petitioner's conviction and

sentencing were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000). *Id.*

Under *Slack*, to warrant a grant of a certificate of appealability, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by him.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
